# THE

# CRIMINAL RECORDER.

The People *vs.* Lawrence Quakenboss. *On Counterfeit Notes.*

NEW-YORK, Dec. 1822.

The People *vs.* L. Quakenboss.

THE prisoner was charged with having in his possession with intention to utter and publish, and also with actually passing a $10 note, of the Bank of Middletown, in the State of Connecticut, to Mr. Josiah Smith. The circumstances of the case were as follows : The prisoner came to Mr. Cox's store in Maiden Lane, and purchased a pair of shoes, and offered the $10 note in payment.— The prosecutor at first hesitated to receive it, but upon the prisoner telling him it was a good note, he finally took it in payment of a pair of shoes, and gave the prisoner $8, retaining two, the price of the shoes.

He observed the hurried manner of the prisoner, in receiving the change. This excited his suspicion that it was a bad note. He went in the evening to different places to ascertain if the note was genuine ; finding the note was counterfeit, he endeavored to see the prisoner, but could not find him.

He then came to the Police Office and made an affidavit of the facts. A warrant was issued, and the officer to whom the warrant was given, found him in the house of Nick O'Bryan, in Banker street. As soon as the prisoner saw the officer, he attempted to make his escape ; he ran into the back room, and was followed by him,

NEW-YORK
Dec. 1822.

The People
vs.
L. Quaken-
boss.

and taken.    After a controversy between him and the officer, he finally concluded that he would go peaceably to the Police Office; but on the way there, he knocked the officer down and attempted to escape.    The officer, by his exertions and the assistance of the by-standers, again secured him, and succeeded in taking him to the Police office.

He was there examined, and refused to give any satisfactory account of himself or the note; except that he had got it from a Mr. Street, in the market.

*Price,* his counsel, called a number of witnesses, who proved that he had sustained a good character, for some time past: that he had formerly suffered for a felony, but that since his discharge last spring, he had sustained a good character.  He, however, chiefly relied on an exception he took to the indictment, which was that the District Attorney, in setting out the note, had misstated it, to wit, in the Cashier's name.    The name upon the note, upon a close inspection, appeared to be " Tim," and a flourish, being evidently intended as an abbreviation for "Timothy ;" but in the indictment it appeared to be "Tim," the dot or mark over the " i " was left out.

Upon this variance and omission the objection was made.

*Maxwell, District Attorney,* replied that he had attempted to make a *fac simile* of the word, in the indictment : that it was true, it was uncertain whether the letter was an " i " in the indictment, or some other letter : that it was sometimes extremely difficult to make out the signature of some people; that in cases of doubt, he always endeavored to make a *fac simile* of the doubtful word ; and that in this case, if it was not an exact representation, it was sufficiently so to save the indictment.

The court left it to the jury to say, whether it was such a variance from the note, as that all of them, or people generally, would not read it as set forth in the indictment: that if, in their opinion, it made a different word, they ought to find the prisoner not guilty; but observed to them, that it was a subject for their determination, as they were judges of the law and the fact; if they were of opinion that there was no ground for the objection taken by the prisoner's counsel, they would then decide upon the evidence before them, whether the prisoner was guilty or not, as charged in the indictment. And after recapitulating the principal circumstances of the case, stated the following facts, proved by the witnesses, as operating against the prisoner.

NEW-YORK.
Dec. 1822.

The People,
*vs.*
L. Quaken-
boss.

"1st. He stated he obtained the bill from a Mr. Street, " in the market; he gives no other information about this " Mr. Street, or the circumstances attending the receipt of "the note, but the simple fact of obtaining the bill from " him, as he ought to have done.

" 2d. He assured Smith the note was good.

"3d. He took up the change from the counter in a hur-"ried and confused manner, without counting it; evincing "fear and apprehension.

"4th. At the time of the arrest he offered $100 to the " officer to release him.

" 5th. He attempted to escape by knocking the officer " down.

"6th. He gave a confused and unsatisfactory account " on his examination in the Police Office.

*And the following facts as operating in his favor.*

" 1. The prisoner passed the note to a person whom he " knew.

" 2d. He gave a true statement of his business.

NEW-YORK,    " 3d. Being in the State's Prison before he might be led
Dec. 1822.  " to offer $100 for the purpose of obtaining his liberty of
The People  the officer, knowing the impression that would exist against
    vs.     him.
L  Quaken-
   boss.       " 4th.  No other spurious bill was found upon him.

              " 5th.  The testimony of a number of witnesses proved
           " tuat ever since he was discharged from the State's Prison,
           "he had conducted himself in such a manner as to be
           " thought trust-worthy by his employers."

           And charged the jury that if they thought the exception
           taken to the variance in the indictment not sustaina-
           ble, to weigh those facts both for and against the pris-
           oner :  If they thought the facts, and the legal presump-
           tion arising from those facts, against the prisoner, they
           would find him guilty ; but on the contrary, if they were
           pursuaded they did not amount to a satisfactory proof of
           his guilt, or if they left a fair and legal doubt, they ought
           to acquit, but that the doubt must be a legal one, such
           as would be raised in a person of a common understand-
           ing, upon a fair, full, and impartial consideration of the
           case before him ; but that if they were of opinion, without
           the existance of such a doubt, they would find him not
           guilty.

           The jury retired, and in a few minutes returned with a
           verdict of not guilty.   To the answer of the question of
           the clerk, whether the prisoner was guilty or not guilty,
           they answered they found him not guilty, on a defect in
           the indictment.

           NOTE.—It is extremely difficult to say what variances are, or are not,
               fatal in an indictment.   Courts of law have been frequently embar-
               rassed in deciding upon omissions and variances, that appear on the
               first view of them trifling ; but when it is considered, that nothing is
               so important to a man as his liberty and his life, every one will see

the necessity of the utmost possible precision in those principles and forms that often deprive him of one or the other, and sometimes of both.

There is a wide and well known distinction between civil and criminal cases, as it respects the doctrine of variances. A prisoner may often take advantage of an omission or variance, not allowed to a party in a civil cause; the law is more indulgent to him; he may take advantage of nicer exceptions. What then are these exceptions?

First, as it respects the omission or variance of a *word* or *syllable*, in reciting an instrument, on which the charge is made.

The rule of law is, wherever the essence or degree of a crime depends upon place, time, sums, value, quantity, and names, they must be described truly, and the omission of a *word* will be fatal. But if they do not make an essential part of the charge, the omission will not be material; it being a general rule, that an allegation, that does not enter into, and make part of the substance of the offence, may be rejected as surplusage.

The following are leading authorities upon this point.

The King v. James Elliot, tried at Maidstone Assizes 21st July, 1777, for forgery. The indictment charged him with forging a note for the " payment of money," and it appeared in setting out the tenor of the note, that it was for the payment of " Fifty," leaving out the word " pounds," which followed: Lord Mansfield left it to the jury to say whether the word " *Fifty* " imported "*pounds*," and they found him guilty of forging " a certain promissory note for the payment of money." Leach Cas. vol. 1. p. 210. 3 Ed.

The word ' tenor' or 'a-foresaid' binds the party to an exact recital. Doug. 37

The King v. May. In this case the prisoner indicted A. for an assault, and upon trial swore that he received an injury, "*whereby his life was greatly despaired of.*" He was indicted for perjury, and in setting out the oath of the prisoner, the word "despaired" was omitted in the indictment. Lord Mansfield ruled, after argument, that the variance was not fatal. Ibid, vol. 1. p. 227.

The words 'in manner & form following, that is to say,' do not bind the party to recite the instrument verbatim.

The King v. John Crogan, Leach Cas. vol. 2. p. 507. Crogan was indicted for publishing the last Will and Testament of one John Gibson. The will offered in evidence begun, "James Gibson do hereby," &c., that recited in the indictment began, "I James Gibson do

King v. Powell, p. 90. ibid 258.

NEW-YORK,
Dec. 1882.

The People
vs.
L. Quaben-
boss.

hereby," &c. inserting the pronoun "I," left out in the Will. The court were unanimous that this was a fatal variance.

The rule upon this subject is, as has been stated : But the manner of describing an instrument in the indictment, affects the rule before mentioned.

1.  When the instrument recited is only inducement for the charge.
2.  When it is matter of substance.

In the first case, a substantial description is sufficient, no formal or technical variance can be taken advantage of, either for the omission of a *letter* or *word*.  But,

3.  Another rule applies :  Care must be taken that the description is not introduced by the words, "to the tenor and effect" or "aforesaid" or "in the words and figures *following*," for these words bind the party to a literal description.
4.  What is matter of substance must be truly set forth; the least deviation is generally fatal. The omission of a word is always fatal.

The omission or addition of a letter may be fatal or not, according to the following rule.

1.  Where the omission or addition of a letter does not change the word, so as to make it another word, the variance is immaterial.  The leading example is, as "air," for "heir," where the meaning is different, and therefore fatal.

The following are the leading cases respecting the omission or addition of a letter in the instrument, and that recited in the indictment.

The King v. Beach, Leach Cas. vol. 1. p. 159, on motion to arrest the judgment; the case was as follows, Beach had been convicted of perjury, upon an affidavit. The affidavit was that "he understood and believed," and in setting out the affidavit, the word *understood* was written *undertood*, omitting the letter "*s*". Lord Mansfield held the variance immaterial, and refused the rule to arrest the judgment.

The King v. Hart, Ibid, p. 159. Hart was charged with forging a note on Messrs Halliday & Co. Bankers, London, in the usual form, and concluded with the words " *value received and place the same to account*

*of* " &c. In setting out the draft in the indictment, the word was truly spelt, tó wit, " *received*," an exception was taken, that this was a fatal variance. The case was left to the jury, and they found the prisoner guilty. Justice Gould said, that he considered it as the same word, only misspelt, and that there was not a possibility of misstating it for any other word in the English language.

NEW-YORK,
Dec. 1822.

See the following authorities: 1 Ld. Raymond, 509.    2 Str. 1218.    3 Salk. 238.

See also, Isaac Vosburgh's case, City Hall Rec. vol. 1. p. 130.    Reuben Rider's case, Ibid. vol. 3. p. 93.